Good morning, your honors. Good morning. I'm Scott Caron, counsel for the appellant, Lee Baca. When someone challenges the sufficiency or specificity or particularity of an arrest warrant, as is the case here, that claim, that challenge, is governed by the Fourth Amendment Particularity Clause exclusively. It is not governed by Fourteenth Amendment procedural due process. The Supreme Court has stated that the Fourth Amendment is tailor-made to govern claims like this. The Fourth Amendment is the Fourth Amendment, and the Fourth Amendment alone, that explicitly addresses the particularity of arrest warrants. And the Fourth Amendment provides the sole source of the constitutional protection that the plaintiff is asserting in this case. So the defendant is entitled to qualified immunity for a variety of reasons, but chiefly because the Fourteenth Amendment does not address those claims. Well, I'm a little bit confused, perhaps, about what's before us and what's not before us because certain things were not final and then certain things are. So in terms of the Fourteenth Amendment claim here, does that have to do with the right to travel and not issuing the passport? It is our position that the Fourteenth Amendment claim is aimed at the sufficiency of the warrant. It's not aimed at the right to travel or the right to be free from an arrest. What the plaintiff claims is that the warrant did not contain sufficient descriptors. There are certain descriptors that were left off, and that led to other actions by third parties like the denial of the passport. But let's talk about how could the sheriff be responsible for another agency that doesn't issue a passport? If there's a process to point out to that agency if they say, well, I'm not going to give you a passport because of this, how can the sheriff be responsible for that if there's some sort of due process? You're saying no, that it can't be. Our claim is that it can't be, and I don't read the plaintiff's complaint as alleging that. I just read the plaintiff's complaint as alleging that on the one end you have the conduct by the defendants, including the appellant here. Well, the judge below says basically that the face of the warrant's fine, and so therefore there's no Fourth Amendment violation, right? But there's a troubling, but I'm just wondering if, all right, this guy's gotten arrested twice, right, and it's not him. All right, and maybe someone could look at it and say he can do jail standing on his head or whatever. He gets arrested, he gets extradited, he's in custody, all of that. Well, okay, it could be me, all right, and I didn't do anything, but some other Connie Callahan is a bad Connie Callahan. And so, yeah, and then I keep getting arrested on this, and I haven't gone to jail yet. I don't want to go to jail, and all sorts of bad things can happen when you're in jail. So can there ever be a Fourth Amendment violation because the sheriff doesn't correct these situations after they happen? Say, okay, the first time, yeah, if you have a common name, maybe it can happen. Certainly the officers that rested on a valid warrant, how would they know they would get qualified immunity? But this guy went to court two times, and he was determined not to be the person that was in this warrant. Can a sheriff ever be responsible for that? I mean, it just doesn't make sense that you can keep arresting someone that isn't the person, and that it can go on ad infinitum, and you can always hide behind qualified immunity. The standard under the Fourth Amendment is not, okay, this person is not the subject of the warrant, and we have to exclude this person as the subject of the warrant. The standard under the Fourth Amendment is whether the warrant reasonably excludes most people as potential subjects and reduces to a tolerable level, to a tolerable number, the number of potential subjects. There's no case law out there holding that a warrant has to specifically exclude. Doesn't the Constitution require that the item, person, matter to be seized must be described with particularity? Of course. Right. And as I understand this warrant system, because I think I've had this case before, as I understand this warrant system, you list on the warrant the specific identifying description of the person so that you have a certain constitutional degree of assurance that your officers are seizing the right person when they're arresting him. And you also have in place a systematic policy of not updating that information, even when you have accurate information. I mean, you know that Reginald Smith, the wrong Reginald Smith, has been arrested before. So isn't the warrant on its face defective? No. To determine warrant particularity, you look at the four corners of the warrant and determine whether or not the description in the warrant is sufficient to reduce and eliminate most people as potential subjects of the warrant. So if you get the wrong person ten times, then that warrant's still good, even though this poor mope that is not that guy gets arrested ten times. At what point do you have to be more particular? Under the prevailing law, that is still sufficient. Are you seriously arguing that the L.A. Sheriff's Department, aware of this problem, has no plans to change it because you're going to hide behind this prevailing law? That's not the claim, and that's not the allegation. That's not the contention that's being made here. The question here is not whether the Sheriff's Department has plans to change the warrant. The warrant actually has been updated. Wait, that warrant. What about system-wide? Are you still relying on your superior court process? You're waiting for the superior court to tell you that the warrant's defective? It never has. So what is the process? The Sheriff's Department has a policy of updating warrants with exoneration information  Well, Mr. Smith's warrant wasn't updated. It was not updated. The warrant was not updated in Rivera v. County of Los Angeles, which I think is controlling on the Fourth Amendment claim here. In Rivera, they made the same exact claim. He had been arrested twice on the same warrant. The warrant had not been updated between the first arrest and the second arrest. He brought a claim for violation of his Fourth Amendment particularity rights, claiming that the warrant was not sufficiently particular because it had not been updated, and for the same reasons, because it had not been updated to change the name and because it had not been updated to include biometric identifiers. Do we have to decide the underlying Rivera issue in this case in order to make a determination of whether qualified immunity is available under Pearson? In this case, you're dealing with an application for a passport, which is discretionary with the State Department. So far as I can tell, there are no cases that would assign liability to an officer like the Sheriff in that setting. Are you aware of any cases of that nature? I'm not. So if that's the case, I gather that the Sheriff's position is that whatever the merits of changing the underlying procedures in the jail as to the specificity of the warrant and how that's processed with new information, that at least in this circumstance, there is no existing case law that says a failure to update where the result is a denial of a discretionary, in this case passport, by a federal agency. There's no such case law, and therefore there is qualified immunity. Is that your position? I'm not aware of any case law, and that would be our position. But even beyond that, as I was saying about Rivera, I do think that Rivera is controlling if the court is going to reach the Fourth Amendment issue. I don't think the court should reach the Fourth Amendment issue. This appeal is based on the denial of qualified immunity as to the plaintiff's Fourteenth Amendment claim. In the district court, the district judge granted our motion for judgment on the pleadings as to the Fourth Amendment claim, found that the warrant— Well, can he ever reach that Fourth Amendment claim? There's still ongoing proceedings down below on this, right? So when that's all done, can the Fourth Amendment claim be reached? Well, not in the procedural posture that the case is in now, because that claim has been dismissed with prejudice. So that claim is gone. The Fourth Amendment claim is gone. So what's left down there? The Fourteenth Amendment procedural due process claim. That's all. The only claim that remains is the Fourteenth Amendment procedural due process claim, and the sheriff's claim for qualified immunity is based on the Fourteenth Amendment procedural due process claim and on grounds that where the Fourth Amendment has been satisfied, which the district court held— But where and when can Apelli in this proceedings question the Fourth Amendment challenge? He lost that in the district court, but the proceedings aren't over. So he can appeal that at some point, can't he? He could appeal that, yes. All right. But you're saying we don't need to reach it here because he can appeal that? I'm saying it would not be proper to reach that here because the plaintiff never filed a cross appeal and never gave us any notice that he would be addressing that issue. The first we heard that he would be raising the issue of the Fourth Amendment violation was when we received his answering brief. There was no cross appeal filed. I don't believe the issues are inextricably intertwined. I believe the court can address the propriety of the Fourteenth Amendment procedural due process claim without even touching the Fourth Amendment claim. If I may, Your Honors, I would like to reserve the remainder of my time for rebuttal. All right. Good afternoon. Good morning still, I hope. Yes. Good morning, Your Honors. Donald Cook for Mr. Smith. What we know in this case is that after Mr. Smith was exonerated of this warrant in August 2007, the county, the sheriff's department, knew he was not the subject of the warrant. They knew how to describe the subject of this warrant so as to preclude Mr. Smith from being arrested again. Their system was in place to capture that information. But the county, pursuant to a systematic practice as alleged in the complaint, simply refused to take the few seconds at a keyboard to enter the information. Well, so how do we get to the Fourth Amendment claim here, though? I mean, I understand that, okay, we have the Fourteenth Amendment and the discretionary denial of the passport or whatever here, and the Fourth Amendment, you didn't appeal that. Well, it is intertwined with the analysis I submit on the Fourteenth Amendment claim. So it is, I would submit, before the court that certainly had the opportunity to respond to it, which they did in a reply brief. I would also submit, though, that there is a Fourteenth Amendment claim on the process that the sheriff's department follows here, which is a refusal to update information they know exonerates the person, prevents the wrongful arrest, and this is, of course, what Judge Feese addressed. Now, it's one thing to say, okay, here's the information we have about our subject, and we put it on the warrant. And maybe that satisfies Fourth Amendment particularity, but when you have another case like this one where you know, wait a minute, we know it's not this guy, we know the wrong person, he can again be identified on this warrant, because it's pretty darn easy, right? The first name is in the ballpark, obviously, the birthdate matches, the ethnicity matches, and the weight and the height is a close match, and it's like, it's going to happen. And it's going to lead not only to wrongful incarceration as happened to Mr. Smith in January of 2011 when the LAPD arrested him, because everybody uses CWS, not just the LAPD, but also the State Department. And every person familiar with the warrant process knows that. Counsel, forgive me. I want to try to focus on what we're dealing with here versus the underlying issue. I get your point about the underlying problem, but in this particular case, the gravamen of the complaint is that your client was denied a passport, right? No. The gravamen of the complaint is broader than that. The gravamen of the complaint is there exists in the warrant system a warrant that fails to exclude Mr. Smith as the subject of the warrant with the information. Okay, all right. Let me back up here. If we were to sever from your complaint the idea that he was denied a passport because of the mistakes of the department or intentional error or whatever, would your complaint be the same? No, it wouldn't, because on Judge Fee's ruling, he addressed the issue of the wrongful arrest in January 2007. He gave us leave to amend as to that claim, and then he also addressed the passport issue and denied the motion. I can say, as I understand Judge Fee's order, the case that we have before us here is the issue of the wrongdoing you believe occurred by the Sheriff's Department and the impact of that wrongdoing that resulted in your client being denied a passport. Is that correct? That's correct. I mean, that's approximate cause of release. I understand. And do you agree that as to that claim? I'm not talking about the underlying practices of the department. As to that claim, that there is no case law that directly would say that the Sheriff was liable in that circumstance? Short answer, I would agree there's no case law dealing exactly with the point that you framed it, but that would not support an entitlement to qualified immunity, and here's why. The basic process, whether you're going to do it to arrest someone or to see whether or not they qualify for a license, a professional license of some sort, or whether you can be issued a passport, is always the same, which is you go to the appropriate law enforcement database, in this case for Mr. Smith, it will always be CWS, the warrant database, and you're going to check it to see if there's an outstanding warrant. That process remains the same, regardless of the purpose for which the government goes to it. So every bad thing that happens to someone because there's something faulty in that system, under your theory, there's clearly established case law that they would be responsible for a third party's actions, even though the third party may have due process in place to allow someone to challenge that. You're getting pretty far out there. Yeah, I know, I know. You're getting kind of scary out there. I submit that that doesn't apply here because, look, first of all, this process of going through the administrative procedure with the State Department, who knows, maybe that works, maybe that doesn't work. What we do know is that at the very first door of this process, the system is set up to cut things off at the pass for this kind of situation, right? Properly identify the person, and it never has any of these collateral consequences. Now, if you take a Matthews versus Eldridge analysis, and I mean fairly makes the point, and that, I would submit, is the case that precludes the finding of qualified immunity here. Look, you have to have procedures in place to prevent this kind of wrongful identification because, again, we all know it can have many collateral consequences. The most obvious one is, of course, incarceration, but that's not the only one. And fairly says you have to have a process, a procedure in place. Sheriff Baca knows there are going to be collateral consequences, and it all stems from a very simple, discreet fact. You identify this person as being the subject of the warrant that isn't his, and you know you have the information, you have the process in place to prevent that from happening, and it costs you nothing to utilize it. Let me ask you a question. If we were to affirm unqualified immunity against Lee Baca, does your case proceed against the department? If you affirm the district court's order, the case proceeds against the department because Judge Fees permitted it, right? He denied their motion to dismiss. If you grant qualified immunity for Lee Baca, then the question is on what prong? If you grant it on the basis that there's no underlying constitutional violation, then that probably defeats the case, right? There's no constitutional violation. There's no claim against the department as well. If his qualified immunity claim is upheld on the second prong, no clearly established law, then obviously the case can go forward against the department. If I, you know, addressed your concern, I'm not sure that I examined it. No, no. I mean at some level of generality, you could say that knowingly arresting someone with a defective warrant is unconstitutional, is a violation of their Fourth Amendment rights, and that is well established. Well, and I would submit it's also a Fourteenth Amendment violation because in this case, I mean you read the Rivera opinion, and what you will not find at all anywhere in the Rivera opinion is any discussion of the failure to update CWS and what that means in terms of a Fourteenth Amendment violation, which is why Rivera is not controlling in this case as to the Fourteenth Amendment claim, right? It's really a Matthews analysis, and I mean the Fairley case. I go back to that. That was my client, Joe Fairley, John Fairley, and he went to court twice in that case, and I mention that because Judge Sandler's opinion says he never went to court. That's absolutely untrue. It's in the record in the Ninth Circuit. He went to court twice, but they didn't have procedures in place to deal with this problem of twins, which everyone knows is an issue for a small segment of the population. And again, I go back to here. Misidentification of a warrant because of same, similar names, birth dates, it's a problem and everyone knows it. Collateral consequences as a result of the misidentification, again, everyone knows it's going to happen beyond just the mere fact that someone is wrongly arrested. So that's why I submit that from Fairley, it is clearly established you must have procedures in place. And notice what the complaint alleges, that as a matter of practice, the department will not update CWS to deal with a situation involving Mike Mr. Smith. And that's not just a hyperbolic allegation. I've got another client, Kelvin Gap, Judge Smith may be right, arrested six times on his brother's warrant. Okay, I think we're going a little outside the record here. That's alleged in the complaint. That's alleged in the complaint. Never got updated, period. So anyway, so the record here is a systematic practice of refusing to use their existing system that costs virtually nothing to use, which has this consequence, wrongly identified as the warrant subject, and that has collateral consequences. Counsel, let me ask you this. My impression is that you acknowledge that on the second prong of Pearson, you may have a problem. On the other hand- I wouldn't say I have a problem, but I realize- Yeah, in any event. But let's just say, if we decided this case on that basis, if you went down again, would you have an opportunity to then cross-appeal? Because, of course, as counsel pointed out, part of your case has not really been pled here. I mean, you referred to it in your briefs, but not in your pleading. Is this the right case for you to do that? Well, my 14th amendment claim has been pled. Right, 14th, but not the 4th. The 4th has been pled. Judge Fies has rejected it. Right. And until I have a final judgment, assuming your honors don't find it's intertwined, until I have a final judgment in the district court, plaintiff cannot appeal. Right. I can always seek reconsideration before Judge Fies, because it's not a final order, and maybe he'll change his mind. I know that he's had several of these cases. He was a former Superior Court judge. He understands the problems, and you may have noticed in his order that he feels there's some disconnect between jurisprudence and 21st century technology. So maybe he'll change his mind. Wasn't he also on the police commission? What? He was also on the police commission, wasn't he? Gee, I don't know the answer to that. I think he was. But no, he clearly understands, I think, the technology issues here, and that's why he has his own frustration. Why aren't you doing this? But obviously he has to follow the law as he reads the law. But this is not just a case of, gee, he didn't get a passport. This is a case of not using a simple, costless procedure, which plaintiff submits as required under Matthews, which hadn't been followed here. This doesn't happen. That is, the State Department says, you're the Reggie Smith wanted on this outstanding felony warrant. This isn't here on judgment on the pleadings? Judgment on the pleadings, correct. We're looking at the factual allegations of the complaint, obviously. I know there are a few additional items requested for judicial notice. And again, really, again, go back to the complaint. What it's about is not utilizing this system. Basically operating like you're still in the 19th and 18th century, even though you've got 20th and 21st century technology there. It's really frustrating to see these cases. There's a lot of things that are frustrating about the sheriff's department. Yeah, I realize. But I know, obviously, there was this concern about, gee, no case dealing with a passport. But as I submit, that's really just a proximate cause issue. And I would submit it's pretty obvious that law enforcement in general and government agencies are going to rely on the CWS to tell the agency if somebody wanted an outstanding felony warrant. So unless there are further questions, I would submit. I can take my 30 seconds for my next appeal. Okay. Thank you very much. You keep track of that. Just a few quick points in response. Counsel referred to Gantt v. County of Los Angeles. I do think it's important to talk about Gantt for this reason. Mr. Smith was a plaintiff in Gantt. He's a named plaintiff in Gantt. And in Gantt, he brought a particularity claim based on the same exact warrant. So the particularity of this warrant is already at issue in Gantt. And I think it might be proved if this court is considering reaching the Fourth Amendment issue, which, again, I don't think it should because it is not properly before the court. We did not have a fair opportunity to respond to the Fourth Amendment issue in our reply brief, which, as the court knows, is shorter than an answering brief would have been. We did not have a fair opportunity. If the court decides to reach that issue or is considering reaching that issue, another reason not to do so is to wait and see what the Gantt panel does. It's pending right now? It is pending right now. Where's the panel? Judge Smith is on the panel, Judge Thomas, Judge Kristen. Okay. Second point with respect to Rivera. Counsel made the claim that the claim that is raised in this case was not raised in Rivera that is not correct. The claim that was raised in Rivera was the plaintiff was arrested multiple times on the same warrant, that the Sheriff's Department did not update the warrant between the first arrest and the second arrest, and that the warrant lacked particularity because the Sheriff's Department did not update it between the first arrest and the second arrest. It's the same exact claim. And, in fact, the identifiers that the plaintiff in Rivera claimed should have been included on the warrant are the same as the identifiers the plaintiff claims in this case should have been included on the warrant. The biometric identifiers, the CII number, FBI number, and the name, the different name. So those claims were raised in Rivera. And I would also point out the panel in Rivera noted that the fact that someone has been arrested on the warrant is irrelevant to the Fourth Amendment particularity question when you're evaluating the particularity of the warrant. Rivera was summary judgment. Correct. And there they relied in part on the fact that there was evidence that the L.A. Sheriff's Department did have a policy of exoneration. But we're just looking at the pleadings right now, right? In Rivera, what the court said in Rivera, and I'm talking about this court, what this court said in Rivera was that. Because Rivera has not presented sufficient evidence that there was an L.A. policy. Right, but that's in addition to the fact that the court also held that there was no Fourth Amendment violation in the first place. That statement about the policy is dictum because the court had already held that there was no Fourth Amendment violation in the first place. The court did hold. And based solely on the information in the warrant. Based solely on the same facts that this court has before it with respect to the warrant. So the issue was raised in Rivera. The issue was adjudicated in Rivera. And I believe Rivera is controlling for that reason. I also want to point out very quickly, because there's been discussion about what would happen if the warrant were to be updated and this information were to be added. Would it protect the plaintiff? The answer is no. If the information that the plaintiff claims should have been included on the warrant were to be included. If the warrant were to be updated exactly the way the plaintiff claims it should have been, the plaintiff would still be subject to arrest under the warrant. Because the plaintiff would still match the description on the warrant. He would still match the name. Even if you added the name Robert Cooks, he would still match the alias Reggie Smith. He would match the date of birth. He would match the physical description. He may not match the CII number, but you know what? Police out in the field wouldn't know that because there is no way to verify a CII number out in the field. That's verified in the complaint. Well, but we're not talking about the officer that does the arrest regarding qualified immunity. Here we're talking about the sheriff. Well, my point, though, is that the plaintiff has made the claim that the warrant not being updated subjects the plaintiff to multiple arrests. My point is that that is not the case. Because if he were to be contacted by police out in the field, those police would have no way of verifying his CII number without arresting him, taking him back to the station, and booking him. The complaint alleges at paragraph 12, I think it's 12E, that the way you verify a CII number is by live scan. And that's done during the booking process after the arrest. But would you still get extradited and in jail for a couple weeks? Well, that didn't happen with respect to this plaintiff's arrest the second time. With respect to the arrest at the issue in this case, he was only in custody. He was in custody less than two hours. And with that, I'll submit. Thank you. Thank you very much. Just one more quick question. Does the fact, the existence of Rivera have any impact on how this court should deal with the underlying issue that counsel has brought before us? I think because the claims in Rivera, as I've said, are identical to the claims that are raised in this case, that Rivera is controlling this case. If you look at not only this court's opinion, but if you look at the district court order from which this court's opinion arose in Rivera, you'll see that the allegations are identical. The claim of not updating the system is identical. Thank you. All right. Thank you, counsel. Smith v. County of L.A. will be submitted, and this session of the court is adjourned for today.
judges: WARDLAW, CALLAHAN, SMITH